**WO** JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aubrey Gale Padgett, | No. CV 08-0617-PHX-MHM (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Department of Corrections, et al., | |
| Defendants. | |

Plaintiff Aubrey Gayle Padgett brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Sergeants Walker and Kirkland and ADC Officer Krumpelman (Doc. #6).[1] Before the Court are Defendants' Motion to Dismiss for failure to exhaust administrative remedies (Doc. #77) and Motion for Summary Judgment (Doc. #78).

The Court will grant the Motion to Dismiss, deny the Motion for Summary Judgment as moot, and terminate the action.

**I.     Background**

Plaintiff's claim arose on February 26, 2008, during his confinement at the Arizona State Prison Complex-Florence, North Unit in Florence, Arizona (Doc. #6 at 1). In his First Amended Complaint, Plaintiff set forth a retaliation claim against Defendants. He alleged

---

[1]The Court screened the First Amended Complaint and dismissed Freeland, Schriro, and the ADC as Defendants (Doc. #52).

1  that he attempted to use the formal grievance process to grieve misconduct by Defendants as they conducted a search of his tent (id. at 3). He claimed that during the search, Walker, Kirkland, and Krumpelman verbally abused and insulted him and destroyed Plaintiff's legal documents (id.). Plaintiff alleged that he informed the officers that he intended to file a formal complaint about their misconduct (id.). Plaintiff stated that Defendants then contacted the inmate "heads" for the yard and informed them of Plaintiff's intent to grieve the officers (id. at 3-3a). Plaintiff stated that a short time later that day, he was paid a visit by the inmate "heads" and told that if he proceeded with the grievance against Defendants, he would receive retaliatory punishment—a "beat down" (id.). Plaintiff averred that he has witnessed other "beat downs" and therefore believed this threat (id.).

Plaintiff requested compensatory, punitive, and injunctive relief (id. at 6-6a). The Court screened the First Amended Complaint and directed Walker, Kirkland, and Krumpelman to respond to the retaliation claim (Doc. #52).[2]

## II. Defendants' Motions

### A. Motion to Dismiss

Defendants move to dismiss Plaintiff's claim on the ground that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #77). In support, they submit the declaration of Aurora Aguilar, a Hearing Officer at the ADC's Central Office in Phoenix (id., Ex. A, Aguilar Decl. ¶ 1). Aguilar describes the four steps in the ADC grievance system: an inmate letter—to attempt informal resolution of the problem; a formal grievance to the Grievance Coordinator; an appeal to the Deputy Warden or Warden; and a final appeal to the Director (id. ¶ 5). A copy of the ADC grievance system is attached to Aguilar's declaration (id., Ex. 1). Aguilar states that this grievance system may be used to grieve issues including, among other things, property, staff, institutional procedures, medical care, and conditions of confinement (id. ¶ 4).

According to Aguilar, on February 26, 2008, Plaintiff submitted a formal grievance

---

[2] Upon screening, the Court dismissed Plaintiff's other two counts (Doc. #52).

concerning Defendants' unprofessional and abusive conduct during the search of his tent that day (id. ¶ 12, Ex. 1 (copy of grievance)). Aguilar explains that Plaintiff did not attempt to informally resolve his complaint before filing this formal grievance; therefore, the grievance was unprocessed (id.). Aguilar further explains that Plaintiff did not file any grievance appeals to the Director related to his complaint about Defendants' conduct during the search or about retaliation or a threat by Defendants to have other inmates harm Plaintiff (id. ¶ 11).

Defendants argue that there is nothing in Plaintiff's single grievance about retaliation or threats for filing grievances (Doc. #77 at 4). They further argue that Plaintiff cannot credibly claim that he was intimidated from filing a grievance on his retaliation claim because the record shows that he submitted his grievance and subsequently filed this lawsuit after he was allegedly threatened by inmate "heads" (id. at 5-6).

### B. Motion for Summary Judgment

In a separate motion, filed on the same date as the Motion to Dismiss, Defendants move for summary judgment on Plaintiff's retaliation claim on the grounds that (1) Plaintiff fails to alleged that he was engaged in protected conduct, (2) Plaintiff filed a grievance and lawsuit after the alleged threats and he made no allegation of threats in response, and (3) there is no evidence that Plaintiff's First Amendment rights have been chilled (Doc. #78).[3]

To support their motion, Defendants proffer a separate Statement of Facts (DSOF) (Doc. #79); the declaration of each Defendant (id., Exs. 1-3); and a copy of Plaintiff's formal grievance regarding their behavior during the search (id., Ex. 4).

---

[3] Defendants also submit arguments for summary judgment on what they refer to as Plaintiff's Eighth Amendment threat-to-safety claim (Doc. #78 at 4-5). The Court previously specified that Plaintiff's allegations set forth a retaliation claim only (see Doc. #52 at 4; Doc. #4 at 5). Therefore, these Eighth Amendment arguments will not be addressed.

- 3 -

C.    **Plaintiff's Response**[4]

Plaintiff filed a combined response to the Motion to Dismiss and Motion for Summary Judgment (Doc. #83). As to exhaustion, Plaintiff explains that the grievance he submitted regarding Defendants' unprofessional behavior did not include facts about the assault by inmate "heads" because the assault did not occur until after he submitted his grievance (id. at 2). He states that because he feared injury or death, he could not complete the grievance process; however, he avers that he was told by Lieutenant Hersch that the matter would be dealt with, and Plaintiff relied on the prison administration to protect him (id. at 3).

In response to the summary judgment arguments, Plaintiff maintains that Defendants' adverse action was directly related to his protected conduct; namely, the right to file a grievance or report misconduct (id. at 2). He submits that the reason he has not been subject to more assaults since filing his lawsuit is because Defendants knew that any further assaults or adverse action would solidify Plaintiff's claims (id. at 3). Finally, Plaintiff argues that there are serious disputes of material fact that preclude summary judgment (id. at 4).

With his response memorandum, Plaintiff submits his own declaration and the declarations of two other inmates, Michael Scott Miller and Rudy Sanchez (id., Ex. A); copies of numerous certificates Plaintiff has received while in custody (id., Ex. B), and the copy of a letter mailed to various lawyers requesting representation (id., Ex. C).

D.    **Defendants' Reply**

In their single reply, Defendants argue that Plaintiff presents no evidence that they took any adverse action against him for engaging in protected conduct (Doc. #85 at 2). They contend that there is no evidence from which a jury could infer their involvement, particularly in light of the fact that Plaintiff's February 26 grievance mentions nothing about

---

[4]The Court issued an Order with the notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), informing Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions regarding exhaustion (Doc. #80). The Court issued a second Order pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), which notified Plaintiff of his obligation to respond to Defendants' summary judgment motion (Doc. #81).

- 4 -

threats by inmates (id.). And they maintain there is no evidence that Plaintiff's First Amendment rights were chilled, since he filed a grievance that same day against Defendants and subsequently filed a lawsuit (id. at 3). Defendants assert that Plaintiff claims for the first time in his response that he was injured in an assault 30 minutes after filing his grievance (id. at 4). They point out that the First Amended Complaint does not mention this assault, nor does Plaintiff submit medical records to show injuries from an assault (id.).

Defendants also contend that Plaintiff's response does not comply with the Local Rules of Civil Procedure because it does not include a separate statement of facts; thus, they submit that their DSOF should all be accepted as true (id. 2-3, 5). They specifically object to Plaintiff's declarations and the inmate declarations on the grounds that they are without foundation and constitute hearsay (id. at 5). And they object to the copies of Plaintiff's certificates for lack of foundation and irrelevancy (id.).

**III. Exhaustion**

**A. Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th

Cir. 1988) (quotation omitted).

**B.     Analysis**

Defendants' evidence shows that Plaintiff filed a grievance regarding Defendants' conduct during the February 26 search of his tent (Doc. #77, Ex. A, Ex. 1).  Defendants also demonstrate that this grievance was unprocessed because Plaintiff did not properly complete the first step in the grievance system (id., Ex. A, Aguilar Decl. ¶ 12).  Thus, the Court agrees that Plaintiff's grievance related to Defendants' conduct during the tent search was not properly exhausted.  However, that is not the subject of Plaintiff's claim in this action. Plaintiff's claim is a First Amendment retaliation claim, stemming from Defendants' actions after the search and after Plaintiff sought to report their conduct.  Defendants demonstrate that Plaintiff did not file a grievance regarding this retaliation claim (id. ¶ 11).  And Plaintiff concedes this fact.  But that does not end the exhaustion inquiry because Plaintiff argues that remedies were not available to him in the face of Defendants' threats to his safety (Doc. #83 at 3).

Plaintiff need only exhaust *available* remedies.  Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).  Numerous courts have held that if prison officials prevent or thwart a prisoner from using an administrative remedy, it is rendered "unavailable" for the purposes of exhaustion.  See Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("a remedy becomes 'unavailable' if prison employees . . . use affirmative misconduct to prevent a prisoner from exhausting") (citation omitted); Abney v. McGinnis, 380 F.3d 663, 667 (2nd Cir. 2004) (inability to utilize inmate appeals process due to prison officials' conduct may justify failure to exhaust); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (same).

The Second Circuit has found that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance . . . ." Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004).  The Court in Hemphill devised

- 6 -

a multi-step approach for resolving whether remedies were rendered unavailable or whether a defendant's exhaustion defense was estopped by threats made to the plaintiff. Id. First, a court must determine if remedies existed and whether the defendants had forfeited or waived the defense of nonexhaustion. If remedies were available, a court is to "consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. at 686 (citations omitted).

Here, a grievance system existed, and Defendants did not forfeit or waive the exhaustion defense. The Court must therefore determine if Plaintiff's allegations concerning the threats by Defendants justify his failure to file a grievance on his retaliation claim. The special circumstances that Plaintiff alleges are that Defendants employed inmate "heads" to threaten Plaintiff and intimidate him from using the grievance system. He claims that Defendants offered special treatment to inmate "heads" to ensure that Plaintiff kept quiet (Doc. #6 at 3b).

As noted by Defendants, Plaintiff's allegations regarding the incident with the inmate "heads" are inconsistent (see Doc. #77 at 5-6). In his First Amended Complaint, Plaintiff alleges that on February 26, 2008, Defendants performed a search of his tent; he informed Defendants that he planned to grieve their conduct; and then at about 3:30 p.m., the inmate "heads" visited him and threatened him not to file a grievance against the three Defendants (Doc. #6 at 3). Plaintiff further alleges that later that day, after dinner, he spoke with Officer Gonzalez and the Lieutenant about Defendants' misconduct during the search, and the Lieutenant advised him to use the grievance process (id. at 3b). Plaintiff states that, pursuant to this advice, he submitted his grievance (id.). But in his response memorandum, Plaintiff avers that his grievance did not contain facts about the assault by inmate "heads" because the assault did not occur until approximately 30 minutes *after* he submitted the grievance (Doc. #83 at 2). He also states that he did not complete the grievance process because the Lieutenant told him that "the matter would be de[a]lt with" (id. at 3).

From Plaintiff's allegations, it is unclear whether, on February 26, Plaintiff was visited

- 7 -

1  once or twice by the inmate "heads"; thus, it is unclear when the alleged assault by the
2  inmate "heads" occurred. And the First Amended Complaint makes no allegation about an
3  assault. Plaintiff also fails to specify whether he spoke to the Lieutenant once or twice.
4  Indeed, each account suggests that Plaintiff spoke to the Lieutenant only once but they are
5  inconsistent as to the timing of the threat or assault. And Plaintiff does not explain whether
6  the Lieutenant's statement that "the matter would be dealt with" referred to the search-
7  misconduct issue or to complaints about retaliation. Plaintiff does not allege in his response
8  that the Lieutenant told him he did not need to file a grievance; in fact, in his First Amended
9  Complaint, Plaintiff asserted that the Lieutenant told him to use the grievance process. Nor
10 does Plaintiff explain why he could complain to the Lieutenant about Defendants but not file
11 a grievance about them.

12    Finally, Plaintiff provides no facts regarding how Defendants worked with inmate
13 "heads" to intimidate Plaintiff, nor does he describe the "special treatment" they received
14 from Defendants for allegedly preventing grievances. Compare Hemphill, 380 F.3d at 683
15 (setting out the plaintiff's detailed factual allegations describing the defendants' actions and
16 direct threats). The Court may not fill-in the missing facts to support Plaintiff's assertion that
17 he was intimidated from filing a grievance. See Ivey v. Bd. of Regents of the Univ. of
18 Alaska, 673 F.2d 266, 268 (9th Cir. 2001) (in giving liberal interpretation to a pro se
19 complaint, a court may not "supply essential elements of the claim that were not initially
20 pled").

21    In short, Plaintiff fails to "plausibly allege" "special circumstances" justifying his
22 failure to file a grievance. See Hemphill, 380 F.3d at 686; see also Ashcroft v. Iqbal, 129
23 S. Ct. 1937, 1949-50 (2009) (when reviewing a complaint on a Rule 12(b)(6) motion to
24 dismiss, determining whether a claim is *plausible* is "context-specific" and requires well-
25 pleaded facts; "mere conclusory statements [ ] do not suffice"). Plaintiff's allegations
26 regarding the threats orchestrated by Defendants are too general and conclusory to
27 sufficiently establish that he was deterred from using the grievance system for his retaliation
28

claim. Thus, Plaintiff has failed to counter Defendants' evidence that he did not exhaust available administrative remedies. The Motion to Dismiss will be granted, and Plaintiff's First Amended Complaint will be dismissed without prejudice. See Wyatt, 315 F.3d at 1120 (proper remedy for failure to exhaust is dismissal without prejudice).

In light of this determination, the Court need not address the summary judgment arguments. The summary judgment motion will be denied as moot.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Dismiss (Doc. #77) and Motion for Summary Judgment (Doc. #78).

(2) Defendants' Motion to Dismiss (Doc. #77) is **granted**.

(3) Defendants' Motion for Summary Judgment (Doc. #78) is **denied** as moot.

(4) The Clerk of Court must dismiss this action without prejudice and enter judgment accordingly.

DATED this 15th day of March, 2010.

Mary H. Murguia
United States District Judge